UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:25-cr-00065 JLT HBK |
| Appellee-Plaintiff, | ORDER AFFIRMING THE MAGISTRATE JUDGE'S DENIAL OF DEFENDANT'S MOTION TO SUPPRESS, AND AFFIRMING DEFENDANT'S CONVICTION |
| v. | |
| CHARLES EDWARD GEARHEART, JR., | (Docs. 42, 77) |
| Appellant-Defendant. | |

I.      INTRODUCTION

On June 13, 2023, Charles Gearheart was charged with three misdemeanors for violating (1) 36 C.F.R. § 2.10(b)(10) for "[c]amping outside of designated sites or areas" in Yosemite National Park ("Count 1"); (2) 36 C.F.R. § 2.4(c) for "carrying or possessing a loaded weapon in a motor vehicle, vessel or other mode of transportation"; and (3) 36 C.F.R. § 2.35(b)(2) for "possessing [111.3 grams of psilocybin mushrooms,] a controlled substance."[1]  (Doc. 1 at 1.)  On August 16, 2024, the Magistrate Judge issued the Order Denying Defendant's Motion to Suppress.  (Doc. 42.)  On October 1, 2024, the Government filed an information, which substituted the firearms-related charge with a new charge that Defendant violated 36 C.F.R.

---

[1]  On November 25, 2024, the Government amended the possession of a controlled substance charge to include both psilocybin and psilocyn, but the Court later dismissed that charge upon motions by both parties. (Docs. 54, 63, 67, 68.)

1

§ 2.32(a)(3)(i) by giving "false information" to an "authorized person." ("Count 3") (Doc. 44 at 2.)  All charges against Defendant are Class B misdemeanors.  (*Id.*)  At trial, Defendant moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure on Count 3. (Doc. 74.)  The Court denied Defendant's motion and found him guilty as to Counts 1 and 3. (*Id.*) Defendant now appeals his conviction as to Count 3 and the denial of his motion to suppress.  For the reasons stated below, the Court **AFFIRMS** the judgment of the Magistrate Judge.

## II.    FACTUAL BACKGROUND

On January 4, 2023, Defendant entered Yosemite National Park in the back left passenger seat of a silver Lexus.  *See* (*United States v. Gearheart*, 6:23-po-00079-HBK, Doc. 21 at 32–33.) Shortly thereafter, Ranger Stephany Hesse stopped the vehicle based on reports of erratic driving.[2]  (*Id.* at 32.)  During this interaction, Defendant admitted that he had smoked marijuana and rangers searched the vehicle where they found: (1) a marijuana glass bong with marijuana residue, (2) a glass bowl with marijuana residue, (3) a plastic bag of marijuana, (4) a jar of marijuana, and (5) a loaded revolver.  (*Id.* at 32–33.)

On June 12, 2023, Defendant traveled to Yosemite in a van to attend a court hearing scheduled for the following day.  (Doc. 76 at 2.)  At approximately 11:00 p.m., Ranger Dell Isola observed Defendant's van parked at a turnout located on Northside Drive west of Michaels Ledges in Yosemite.  (*Id.*)  This location was not designated for camping.  (*Id.*)  Dell Isola observed Defendant's van had foil shades covering the driver's side, passenger's side, and front windows, which led Dell Isola to suspect Defendant was unlawfully camping out of bounds.  (*Id.*) At this time, Dell Isola was one month into his field training and accompanied by his training officer, Ranger Jacob Blade.  (*Id.*; Doc. 40 at 27.)

Ranger Dell Isola approached Defendant's van and announced himself as law enforcement.  (Doc. 76 at 2.)  Defendant spoke with Dell Isola from inside the cargo area on the passenger side of his van.  (*Id.*)  Defendant told Dell Isola that he needed to put on clothes, was in

---

[2] Ranger Jacob Blade was also present, but he "spent almost the entire time more than a car length's away or helping overseeing Ranger Hesse's search of the Lexus." (*United States v. Gearheart*, 6:23-po-00079-HBK, Doc. 21 at 11 n.4.)   The Court notes that the magistrate court refers to Ranger Jacob Blake, but it appears this is a typo and the correct name is reflects Ranger Jacob Blade.  (*Id.* at 32.)

the park to attend a court hearing the next day and had a dog in the van. (*Id.*)  Defendant told Dell Isola his name, date of birth, and that he had a California driver's license.  (*Id.*; Doc. 17 Ex. 2 at 01:00–01:55.)  Dell Isola said he was "going to run his name and [date of birth]" and told Blade that "[i]t's kind of a weird setup with his dog."  (Doc. 17 Ex. 2 at 02:10–02:22.)  Defendant then volunteered to "throw [his] shoes on and come out and shut the door."  (*Id.* at 02:23–02:25.)  The rangers accepted, stating, "yeah, let's do that."  (*Id.* at 02:26–02:27.)

As Defendant exited his vehicle, Dell Isola observed a water pipe inside the van, which Ranger Dell Isola suspected may have been used to smoke marijuana based on his training and experience.  (Doc. 40 at 11.)  Once outside his van, Defendant adjusted his belt and then held up his hands and said "sorry" to Dell Isola.  (Doc. 17 Ex. 2 at 02:52–02:59.) Dell Isola asked Defendant: (1) if he had any guns on his person; (2) if he had any guns in his vehicle (while gesturing toward the van); and (3) if he had any other weapons or knives on his person.  (Doc. 76 at 3.)  To these specific questions, Defendant answered: (1) "No, I don't;" (2) "No . . . no I'm just tryin' to, I'm just tryin' to tighten my belt;" and (3) "No, I have nothing on me. . . You can pat me down."  (*Id.*)  Before being pat down, Defendant waited next to his van for approximately one minute while Dell Isola requested for backup over his radio.  (Doc. 17 Ex. 2 at 03:14–04:10.)

Dell Isola began the pat-down search of Defendant.  (Doc. 76 at 3.)  About 90 seconds into the pat-down, Defendant became unsteady on his feet.  (*Id.*)  Dell Isola offered to call an ambulance and asked Defendant if he had taken drugs.  (*Id.*)  Defendant declined an ambulance and denied taking any drugs, but admitted he recently drank a beer, had been sleeping, had not eaten, and was nervous about his dog.  (*Id.*)  Dell Isola resumed the search, but shortly thereafter Defendant lost consciousness.  (*Id.*; Doc. 8-1 at 3.)  Rangers then called Emergency Medical Services.  (Doc. 76 at 3.)  By that time, Rangers Stephany Hesse and Aaron Zaveksy had arrived at the scene and began to attend to Defendant's medical needs until Emergency Medical Services personnel arrived.  (*Id.*)  Once Defendant was medically cleared, Dell Isola completed the previously interrupted pat-down.  (*Id.*)

After completing the pat-down, Dell Isola informed Defendant that rangers would search his van because of the presence of the water pipe.  (Doc. 8-1 at 3.)  Defendant told Dell Isola that

3

Defendant used the pipe to smoke tobacco and invited rangers to smell it. (*Id.*; Docs. 17 Ex. 2 at 35:10–35:18; 40 at 12.) Dell Isola asked Defendant to remove the pipe from his van and put it on the ground, and Defendant complied. (Doc. 17 Ex. 2 at 38:50–39:16.) Ranger Dell Isola smelled the pipe and stated, "Yeah, it smells like tobacco, I think we're good." (*Id.* at 39:30–39:38.) Dell Isola then put down the pipe and spoke with Defendant about camping out of bounds. (*Id.* at 39:38–40:20.)

While Defendant and Dell Isola discussed the camping issue and approximately 40 seconds after Dell Isola smelled Defendant's pipe, Rangers Blade, Hesse, and Rippetoe[3], examined the pipe and smelled marijuana emanating from it. (Docs. 17 Ex. 3 at 42:05–42:40; 40 at 13, 72.) Blade testified that it is common practice to double-check the work of trainees and that he had "never seen a pipe of that sort being used to use tobacco." (Doc. 40 at 35, 55.) Blade then informed Dell Isola that he smelled marijuana in the pipe. (Doc. 8-1 at 3.) Given the smell of marijuana, rangers searched Defendant's van for contraband. (*Id.*) During the search, Defendant informed the rangers that there was a gun in the front passenger seat of his van. (Doc. 76 at 3.) During the search, the rangers also discovered a loaded shotgun, multiple edged and blunt weapons, 0.3 grams of processed marijuana, and psylocibin mushrooms. (*Id.*) Thus, the rangers arrested Defendant. (*Id.*)

## III.   PROCEDURAL HISTORY

On June 13, 2023, the Government charged Defendant with three Class B misdemeanors: (1) "[c]amping outside of designated sites or areas" in violation of 36 C.F.R. § 2.10(b)(10); (2) "carrying or possessing a loaded weapon in a motor vehicle, vessel or other mode of transportation" in violation of 36 C.F.R. § 2.4(c); and (3) possessing 111.3 grams of psilocybin mushrooms in violation of 36 C.F.R. § 2.35(b)(2). (Doc. 1 at 1.)

On September 25, 2023, Defendant moved to suppress all evidence seized from his van arguing that once Dell Isola determined Defendant's pipe smelled like tobacco, rangers did not have probable cause to search his van. (Doc. 8 at 8–9.) The Magistrate Judge, however,

---

[3] Ranger Rippetoe responded to the scene and was the on-scene supervisor. (Docs. 40 at 35; 76 at 3.)

concluded that the other rangers "were not required to ignore their own suspicions that the pipe was in fact used for marijuana and cease all further investigation." (Doc. 42 at 11.)  Defendant also argued that the rangers unduly prolonged the traffic stop by asking about guns, taking a moment to listen to radio traffic, and patting down Defendant, rather than simply issuing a citation for camping out of bounds.[4]  (Doc. 8 at 8.)  The Magistrate Judge, however, determined that there was not "impermissible questioning or delay by the [r]angers," but rather it "occurred while the [r]angers were still completing their mission of verifying [Defendant's] information and occurred in large part because of [Defendant's] decision to exit the vehicle."  (Doc. 42 at 8.)

On October 1, 2024, the Government filed an information, which substituted the firearms-related charge with a new charge that Defendant violated 36 C.F.R. § 2.32(a)(3)(i) for falsely telling Dell Isola that he did not possess a firearm.  (Doc. 44 at 2.) On March 11, 2025, the Magistrate Judge dismissed the 36 C.F.R. § 2.35(b)(2) charge for possessing a controlled substance upon motions from both parties.  (Docs. 63, 67, 68.)  The case then proceeded to trial on Counts 1 and 3.

Following the Government's case-in-chief, Defendant moved for a judgment of acquittal on Count 3 under Rule 29(a).  (Doc. 74.)  Defendant claimed that he did not make a false statement to Dell Isola about the presence of a firearm in his van because Defendant did not understand Dell Isola's question about whether Defendant had guns in his vehicle.  (*United States v. Gearheart*, 6:23-mj-00006-HBK, Doc. 81 at 135–36.)  Defendant also argued that he did not affirmatively provide false information when he stated, "no . . . no I'm just tryin' to, I'm just tryin' to tighten my belt." (*Id.* at 136–40.)  In denying the motion, the Magistrate Judge found: (1) Defendant did not appear unsteady before and during the question at issue; (2) Defendant stated "no" to the question about guns in the vehicle as Ranger Dell Isola pointed towards the van; (3) Defendant did not give a simple no to the weapons related questions, but expounded upon them; (4) Defendant's nervousness could, in part, have been due to having just knowingly

---

[4]  Defendant also argued that a marijuana-smelling water pipe alone does not establish probable cause to search for further contraband, and that marijuana's "effective" federal decriminalization negates probable cause but does not raise these issues on appeal. (Doc. 8 at 9–13.)

lied to an officer; and (5) Defendant only volunteered presence of firearms in the vehicle when they were about to be discovered, which suggests knowledge of previously having given false information. (*Id.* at 149–52.)

The Magistrate Judge convicted Defendant on counts 1 and 3 (*Id.* at 228–29) and issued written findings of fact and conclusions of law on March 20, 2025. (Doc. 76.) On March 31, 2025, Defendant appealed his conviction and the denial of his motion to suppress to the District Court.[5] (Doc. 78.)

## IV.    LEGAL STANDARD

In reviewing an appeal of a Magistrate Judge's order or judgment, the district court's review is the "same as an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). Accordingly, the Magistrate Judge's legal conclusions are reviewed de novo, while "findings of fact underlying those conclusions [are reviewed] for clear error." *United States v. Rodriguez*, 518 F.3d 1072, 1076 (9th Cir. 2008) (citations omitted); *United States v. McDermott*, 589 F. App'x 394, 395 (9th Cir. 2015) (same as to district court's review of magistrate court's rulings (citations omitted)).

The Court may "affirm [the magistrate] court's judgment on any ground supported by the record, whether or not the decision of the [magistrate] court relied on the same grounds or reasoning." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) (citation omitted); *United States v. Charette*, 893 F.3d 1169, 1175 n.4 (9th Cir. 2018) (same in criminal case involving magistrate court bench trial); *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986) (same as to motion to suppress).

## V.    ANALYSIS

### A.  Rangers Blade, Hesse, and Rippetoe Had Independent Reasonable Suspicion That Defendant's Pipe Contained Marijuana.

The Fourth Amendment guarantees "(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

---

[5] Defendant did not appeal his sentence despite stating that he appealed "the sentence the magistrate imposed" in his opening brief. (Docs. 78; 94 at 9.)

Traffic stops[6], "even if only for a brief period and for a limited purpose," are "seizures" within the meaning of the Fourth Amendment and therefore are "subject to the constitutional imperative that [they] not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002) ("The Fourth Amendment's prohibition against unreasonable searches and seizures applies to investigatory traffic stops.")

On a motion to suppress, the movant has "the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted). "To do so, he must establish either that he personally had a property interest protected by the Fourth Amendment that was interfered with, or a reasonable expectation of privacy that was invaded by the search." *United States v. Bowie*, 726 F. App'x 625, 626 (9th Cir. 2018) (citations and internal quotation marks omitted). If the movant makes such a showing, the burden shifts to the Government to show, by a preponderance of evidence, that an exception applies. *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012). Under the exclusionary rule, evidence obtained in violation of an individual's Fourth Amendment rights, including any "fruit of the poisonous tree," is excluded from a criminal trial. *United States v. Cervantes*, 703 F.3d 1135, 1143 (9th Cir. 2012).

Defendant does not challenge the lawfulness of the initial contact for camping outside the designated area but argues the Magistrate Judge erred in finding the investigating rangers had reasonable suspicion to sniff his water pipe after Ranger Dell Isola did not smell marijuana in the pipe. (Doc. 94 at 7.) Therefore, Defendant claims the Magistrate Judge should have suppressed

---

[6] Both parties view, and the Magistrate Judge accepted, the relevant interaction between Defendant and the rangers was a traffic stop as opposed to a *Terry* stop. (Docs. 8 at 7; 17 at 12 n. 8; 42 at 6 n. 4.) As explained by the Magistrate Judge, the distinction is not material because the two are analytically the same. *See United States v. Nault*, 41 F.4th 1073, 1080 (9th Cir. 2022) ("Whether described as a traffic stop or an investigative vehicle stop, the analysis here is the same. Traffic stops are analyzed under the same *Terry* principles that apply to investigative stops.") (internal quotation marks omitted). Factually, however, the evidence is undisputed that the rangers did not stop the van. Rather, it was parked on the side of the road, and had foil sunscreens placed on the windows, such that it was prevented from being driven at the time the officer first approached the van and spoke to Defendant. Thus, the Court declines to treat the interaction as a traffic stop and, therefore, rejects the argument that the "traffic stop" was unduly prolonged.

any evidence obtained from the subsequent search of Defendant's vehicle.  (*Id.*)

Defendant asserts that as the primary officer, once Dell Isola smelled tobacco emanating from Defendant's pipe, the other rangers could not have formed an independent reasonable suspicion that Defendant possessed marijuana, and the investigation should have immediately ceased.  (Doc. 94 at 18, 27.)  Though Rippetoe testified that the primary officer usually has discretion when rangers disagree if a substance smells like marijuana, the Magistrate Judge found there is no legal requirement that "only one officer at a scene can develop probable cause or that multiple officers cannot investigate the same evidence and come to different conclusions." (Docs. 40 at 83–84; 42 at 11.)  Despite being considered the primary or lead officer at the scene, Dell Isola was still in training and understood the interaction with Defendant was part of a "hands-on[,] on-the-ground experience while still having a more experienced ranger walk [him] through things and help [him] . . . make decisions."  (Doc. 40 at 28.)  Even if differentiating between tobacco and marijuana smells does not require specialized training, it is reasonable and expected that more senior officers would double-check Ranger Dell Isola's decisions.  Indeed, Ranger Blade testified that it is common practice to double-check the work of trainees.  (*Id.* at 35.)

Defendant's reliance on *United States v. Davis* 430 F.3d 345, 356 (9th Cir. 2005 is misplaced.  In *Davis* "there were no grounds for the police to continue to believe the vehicle contained narcotics" once the "qualified, trained, and certified [drug-sniffing] dog . . . [with a] success rate at accurately identifying the presence of narcotics [at] over ninety percent" did not identify any narcotics.). Even still, the Ninth Circuit has held that even in the face of a negative finding by a drug-sniffing dog will not necessarily preclude further search or negate probable cause based on other evidence.  *See e.g.*, *United States v. Valencia*, 584 F. App'x 488, 489 (9th Cir. 2014) ("In light of the totality of circumstances, the probable cause affidavit still would have established a 'fair probability' that contraband would be found in the truck, even if the negative sniffs were included."); *United States v. Simpkins*, 978 F.3d 1, 9 (1st Cir. 2020) ("In the case at hand, we conclude that the dog's failure to alert did not vitiate probable cause, given both the strength of the information previously gleaned from CD and the fruits of the investigation up to that point."); *United States v. Villafranco-Elizondo*, 897 F.3d 635, 644 (5th Cir. 2018) ("[W]e

have previously rejected the notion that the failure of a drug dog to alert deprives officers of existing probable cause.  We apply that principle here.  By the time the canine search began, the officers had developed probable cause to search the vehicle."); *United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir. 2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all.") Unlike the police dog in *Davis*, here, the other rangers had no reason to trust the ability of Ranger Dell Isola to accurately identify the presence of narcotics, even if he was familiar with the smell of marijuana.

Courts across the country have found it reasonable for officers to conduct multiple searches under appropriate circumstances.  *See e.g.*, *United States v. Williams*, 930 F.3d 44, 55 (2d Cir. 2019) (the defendant's agitated and stressful demeanor "suggested a need to go back and check [the detectives'] work in connection with the inventory search that they had just performed"); *United States v. Avila*, 615 F. Supp. 3d 846, 871 (N.D. Ill. 2022) (officer's second search of front passenger seat area in the suspect's car was reasonable because "[that] was the most likely location for any weapon possessed by the passenger.")  Ultimately, "[t]here is no one-and-done rule under the Fourth Amendment, especially when the officer harbored doubts about the adequacy of the initial search and wanted to double-check." *Avila*, 615 F. Supp. 3d at 872.  Thus, Ranger Dell Isola's conclusion that Defendant's pipe smelled like tobacco was informative, but not controlling if other rangers had independent reasonable suspicion or probable cause to suspect otherwise.

Rangers Blade, Hesse, and Rippetoe each had an independent reasonable suspicion that Defendant's pipe contained marijuana based on objective articulable facts.  First, Rangers Blade and Hesse had interacted with Defendant five months earlier when he admitted to having smoked marijuana and rangers found marijuana in his vehicle.  Second, Ranger Blade suspected that Defendant's fainting could be a sign of drug use.  (Doc. 40 at. 54.)  Third, Rangers Blade and Rippetoe each explained they were suspicious that Defendant would not use the pipe only for tobacco based on the nature of the pipe.  Ranger Rippetoe testified that "[i]t would be very unusual for somebody to smoke tobacco out of a bong – not impossible, but very unusual." (*Id.* at

79.)  Similarly, Ranger Blade testified that "[i]n [his] training and experience over a decade, [he had] never seen a pipe of that sort being used to use tobacco." (*Id.* at 55.)  Even if Defendant's pipe was most recently used for tobacco, that does not negate the rangers' reasonable suspicion that the pipe is more usually used to smoke illegal, controlled substances.

Because Rangers Blade, Hesse, and Rippetoe had reasonable suspicion to believe that Defendant's pipe contained marijuana, the Fourth Amendment allowed them to double-check Ranger Dell Isola's determination that Defendant's pipe only smelled like tobacco.  Accordingly, the parties' dispute over whether the second sniff measurably extended the rangers' interaction with Defendant is immaterial.  Once the rangers smelled marijuana emanating from Defendant's pipe, they had probable cause to search his vehicle under the automobile exception.  Thus, even without independent reasonable suspicion, the rangers did not violate Defendant's Fourth Amendment rights by sniffing his pipe a second time.

### B. Defendant Reasonably Consented to Rangers Blade, Hesse, and Rippetoe to Smelling His Pipe.

Even if Rangers Blade, Hesse, and Rippetoe did not have reasonable suspicion to smell Defendant's pipe, the rangers did not violate Defendant's Fourth Amendment rights because Defendant reasonably consented to the search as a matter of law.

Consent is a well-established exception to the Fourth Amendment's prohibition on warrantless searches.  *Morgan v. United States*, 323 F.3d 776, 781 (9th Cir. 2003).  Consent can be express or implied, but it must be "unequivocal and specific." *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011).  "The standard for measuring the scope of consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (citations omitted.)  In a non-binding decision, the Ninth Circuit indicated that this objectively reasonable standard includes an analysis of whether the suspect "reasonably understood [his] consent to extend to the search conducted." *United States v. Yerger*, 12 F.3d 1110, at *3 (9th Cir. 1993).  The government must prove that consent was effectively given. *United States v. Shaibu*, 920 F.2d 1423, 1428 (9th Cir. 1990).

As noted by the Magistrate Judge, the Court is unaware of any case holding that a defendant can limit who may conduct the search, as opposed to the physical scope of the search. Moreover, the Ninth Circuit ruled in *United States v. Perez*, a drug-sniffing dog smelling outside of Defendant's van did not exceed the scope of Defendant's written consent to officers.  37 F.3d 510, 515–16 (9th Cir. 1994) overruled on other grounds by *United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007).  The Court in *Perez* reasoned that "the search was not more intrusive than Perez had envisioned when giving his consent, but rather simply more effective." *Perez*, 37 F.3d at 515–16.  Though Defendant argues that he only intended to give consent to Ranger Dell Isola, Defendant should have reasonably expected that his consent would extend to other officers also smelling the pipe.  When he offered to allow the rangers to smell his pipe, Defendant did not look at Ranger Dell Isola but instead looked around at other rangers.  (Doc. 17 Ex. 2 at 35:10–35:18.)  Defendant's body language did not reflect any intention to limit his consent to Ranger Dell Isola and there is no reason to believe that Defendant intended to rely on Ranger Dell Isola's drug identification skills specifically.

### C. Rangers Blade and Rippetoe Lawfully Smelled Defendant's Pipe Under the Plain-View Doctrine.

Even if Defendant did not consent to other rangers smelling his pipe, Rangers Blade and Rippetoe were permitted to do so under the Fourth Amendment's plain-view doctrine.  The Supreme Court has ruled that "[when] an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton v. California*, 496 U.S. 128, 133 (1990).  Further, the warrantless seizure of an item in plain view is justified when its incriminating nature is "immediately apparent." *See Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971).

Defendant's pipe was in the rangers' plain view both while inside Defendant's van and once he placed it on the ground outside.  Rangers Blade and Rippetoe also testified that the nature of the pipe itself made them suspect that Defendant used it for marijuana.  Accordingly, those officers could lawfully inspect Defendant's pipe for marijuana under the plain-view doctrine.

///

11

**D. The Rangers Had Probable Cause to Search Defendant's Van Under the Automobile Exception**

The automobile exception permits officers to conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains contraband. *United States v. Ross*, 456 U.S. 798, 799 (1982). "Probable cause to search exists when the known facts and circumstances are sufficient to warrant a reasonable person to conclude that contraband or evidence of a crime will be found." *United States v. Ibarra*, 345 F.3d 711, 716 (9th Cir. 2003). Probable cause justifies the search of every part of a lawfully stopped vehicle and its contents that may conceal the object of the search. *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999). There is probable cause if there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The parties unnecessarily rehash their earlier arguments over independent reasonable suspicion to argue over probable cause, but once rangers smelled marijuana emanating from Defendant's pipe, they had probable cause to search his van. *See United States v. Chelgren*, No. CR-S-10-182 KJM, 2010 WL 3210839, at *4 (E.D. Cal. Aug. 10, 2010) (holding "smell [of burnt marijuana] alone established probable cause to search the interior of the car" (collecting cases.); *see also United States v. Alvarez*, 2023 WL 6567602, at *1 (9th Cir. Oct. 10, 2023) (finding the clinking sound from a glass pipe that an officer suspects is drug-related paraphernalia can establish independent probable cause to search a car.) Despite that Ranger Dell Isola only smelled tobacco in Defendant's pipe, the fact that the other rangers smelled marijuana established a fair probability that marijuana would be found in Defendant's van under the totality of circumstances. Defendant claims that a 3-1 difference of opinion between the rangers amounts only to a mere suspicion insufficient to establish probable cause, but a reasonable officer would also consider Defendant's fainting, the nature of the pipe, and Defendant's prior admission of smoking marijuana in determining there was a fair probability Defendant possessed marijuana in

his van.[7] Thus, the Magistrate Judge did not err in denying Defendant's motion to suppress.

**E.  There is Sufficient Evidence to Hold Defendant Guilty of Count 3**

Claims of insufficient evidence are reviewed de novo.  *United States v. Antonakeas*, 255 F.3d 714, 723 (9th Cir. 2001).  "For a challenge to the sufficiency of the evidence following a bench trial," courts review "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018) (emphasis in original) (citation omitted).  However, "when a defendant 'did not raise [an] issue before the [trial] court, [the appellate court] review[s] for plain error.'"  *United States v. Wells*, 29 F.4th 589, 592 (9th Cir. 2022) (internal citation omitted). "To establish plain error, the defendant must at least demonstrate an error, that the error was plain, and that the error prejudiced his substantial rights."  *United States v. Kirst*, 54 F.4th 610, 620 (9th Cir. 2022) (citations omitted).  "[A] conviction [may be overturned] for plain error resulting in insufficient evidence only to prevent a miscarriage of justice or to preserve the integrity and the reputation of the judicial process."  *Id.* (citations and internal quotation marks omitted).  "An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results."  *Id.*  (citations omitted).

At trial, the Magistrate Judge found Defendant guilty of knowingly providing false information to Ranger Dell Isola when, in response to Ranger Dell Isola's question about whether Defendant had any guns in his vehicle, Defendant stated "no . . . no I'm just tryin' to, I'm just tryin' to tighten my belt." (Doc. 76 at 7–8.)  Though Defendant also contested at trial that the Government could not prove he possessed the requisite mens rea to knowingly provide false information to Ranger Dell Isola, on appeal he contends only that a reasonable factfinder could not conclude beyond a reasonable doubt that the information Defendant told Ranger Dell Isola

---

[7] The Court is unaware of any authorities that seeks to quantify probable cause in this manner. Defendant cites to *United States v. Lopez*, 482 F.3d 1067 (9th Cir. 2007) for this proposition but, of course, *Lopez* does not so hold. At most, *Lopez* quotes McKenzie v. Lamb, 738 F.sd 1005, 1008 (9th Cir. 1984), which observed that "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough" to establish probable cause.

13

was indeed false.  (Doc. 94 at 37.)  Defendant argues that his answer, when viewed in context of their entire interaction, was not in response to Ranger Dell Isola's specific question about guns in Defendant's vehicle, but rather Defendant's attempt to address the rangers' concern that he did not have a gun on his person.  (*Id.* at 38.)  The Magistrate Judge, however, reasonably determined that Defendant's response was a purposeful attempt to change the subject.  *See* (*United States v. Gearheart*, 6:23-mj-00006-HBK, Doc. 81 at 150 ("[Y]ou know, it's kind of almost like trying to come up with something else to talk about."))  Contrary to Defendant's claim, there is no indication that the Magistrate Judge viewed Defendant's response in isolation, rather than within the totality of Defendant's exchange with the rangers.  Viewing the evidence in the light most favorable to the prosecution, Defendant's statement about tightening his belt after responding "no" to Ranger Dell Isola's explicit question if there were guns in Defendant's vehicle does not create a reasonable doubt such that any rational trier of fact could not convict Defendant for violating Count 3.

Defendant also claims, for the first time on appeal, that even if his response is considered evasive, he cannot be held criminally liable for a non-responsive or evasive answer.  Defendant reasons that because the Ninth Circuit has found deliberately evading a question under oath insufficient to convict a defendant for obstruction of justice, Defendant cannot be convicted for a non-sworn evasive statement to Ranger Dell Isola.  (Doc. 94 at 39.)  However, Defendant's statement about tightening his belt is not the false statement on which he was convicted, but rather, it was his denial that he had guns in his van.  A rational trier of fact could find beyond a reasonable doubt that Defendant knowingly provided a false statement to Ranger Dell Isola when he denied having guns in his van, regardless of his additional statement about tightening his belt.  Accordingly, the Magistrate Judge did not err in finding Defendant guilty of Count 3.

**VI.    CONCLUSION**

For the reasons set forth above, the Court **ORDERS**:

1. The Magistrate Judge's order denying Defendant's motion to suppress (Doc. 42) is **AFFIRMED**.

2. The Magistrate Judge's judgment of guilt, determining that Defendant is guilty of

violating 36 C.F.R. § 2.32(a)(3)(i) (Doc. 76) is **AFFIRMED**.

IT IS SO ORDERED.

Dated:    **May 18, 2026**

UNITED STATES DISTRICT JUDGE

15